**SCALE LLP**
Jamie D. Wells (SBN 290827)
jamie.wells@scalefirm.com
Alexander J. Gershen (SBN 291929)
agershen@scalefirm.com
Corey Pedersen (SBN 336376)
cpedersen@scalefirm.com
2261 Market Street STE 85604
San Francisco, CA 94114
Telephone: 415.735.5933

Attorneys for Defendant
Point Digital Finance, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MICHELLE A. KEMP,

Plaintiff,

v.

POINT DIGITAL FINANCE, INC.,

Defendant.

Case No. 5:26-cv-01990-NC

**DEFENDANT POINT DIGITAL FINANCE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

Date: June 10, 2026
Time: 11:00 a.m.
Place: Courtroom 5

Complaint Filed: March 8, 2026

Hon. Magistrate Judge Nathanael M. Cousins

**TO THE HONORABLE COURT, PLAINTIFF, AND HER ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on June 10, 2026, at 11 a.m., in Courtroom 5 of the U.S. District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Point Digital Finance, Inc. ("Point") will and hereby does move the Court for an order dismissing the complaint of Plaintiff Michelle A. Kemp ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. This motion is made on the grounds that Plaintiff fails to plausibly allege essential facts necessary to assert her claims as a matter of law.

This motion is based upon this notice of motion and motion to dismiss, the attached memorandum of points and authorities, the request for judicial notice filed concurrently with this motion, the complete files and records in this action, and upon such other matters as the Court may allow.

Date: April 27, 2026

Respectfully submitted,

**SCALE LLP**

By: */s/ Alexander J. Gershen*

Alexander J. Gershen
2261 Market Street, Ste 85604
San Francisco, CA 94114
Telephone: 415.735.5933
agershen@scalefirm.com

Attorney for Defendant
Point Digital Finance, Inc.

# TABLE OF CONTENTS


**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 2

A. Plaintiff Alleges She Applied for Point's Home Equity Investment Product in January 2026, Which Point Later Declined ..... 2

B. Plaintiff Files Suit Against Point Alleging State and Federal Statutory Claims of Discrimination Against an Applicant Due to Her Sex ..... 2

III. LEGAL STANDARD ..... 3

IV. LEGAL ARGUMENT ..... 3

A. An Option Contract is Generally Not Considered "Credit" and Thus ECOA Does Not Govern Plaintiff's Application for Point's Product ..... 3

B. Even If ECOA Governed Point's Option Contract, Point Complied with Any Requirements by Making a Regulation-Approved Disclosure Notifying Plaintiff of Her Right to Request a Statement of Specific Reasons for Her Denial ..... 6

C. Plaintiff Fails to Sufficiently Allege Facts Supporting Her Theory of Discrimination ..... 8

D. Amendment Would Be Futile, Thus Dismissal with Prejudice Is Warranted ..... 9

V. CONCLUSION ..... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abagninin v. AMVAC Chemical Corp.*,
545 F.3d 733 (9th Cir. 2008) ....................9

*In re AEG Acquisition Corp.*,
127 B.R. 34 (Bankr. C.D. Cal. 1991), *aff'd*, 161 B.R. 50 (B.A.P. 9th Cir. 1993)....................5

*Akhavein v. Argent Mortg.*,
2009 WL 2157522 (N.D. Cal. 2009) ....................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3

*Barat v. Navy Fed. Credit Union*,
127 F.4th 833 (11th Cir. 2025) ....................7

*Bell Atl. v. Twombly*,
550 U.S. 544 (2007)....................3

*Billings v. Propel Fin. Servs.*,
821 F.3d 608 (5th Cir. 2016) ....................4

*Collins v. San Antonio Dodge Chrysler Jeep Ram*,
2025 WL 3143640 (W.D. Tex. 2025)....................8

*Combs v. Bank of Am., N.A.*,
2015 WL 5008754 (D. Md. 2015) ....................6

*Consumer Financial Protection Bureau v. Snap Finance LLC*,
2024 WL 3625007 (D. Utah 2024)....................4

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009) ....................3

*Cyclone USA v. LL&C Dealer Servs.*,
2003 WL 27377175 (C.D. Cal. 2003)....................8

*Das v. WMC Mortg. Corp.*,
831 F. Supp. 2d 1147 (N.D. Cal. 2011) ....................9

*Ford Motor Credit v. Milhollin*,
444 U.S. 555 (1980)....................5

*Foster v. Equitykey Real Est. Invs.*,
2017 WL 1862527 (N.D. Cal. 2017) ....................4, 5, 6

*Glenn v. Wells Fargo Bank, N.A.*,
2016 WL 3570274 (D. Md. 2016) ....................6

*Goldwater Bank, N.A. v. Elizarov*,
2022 WL 18231680 (C.D. Cal. 2022), *rev'd and remanded sub nom. Goldwater Bank, NA v. Bank of the W*, *2025* WL 841846 (9th Cir. 2025)....................4

*In re Grand Union Co.*,
219 F.353 (2d Cir. 1914) ....................4

*Hafiz v. Greenpoint Mortg. Funding, Inc.*,
652 F.Supp.2d 1039 (N.D. Cal. 2009)....................3

*Lumpkin v. Am. Express Co.*,
2025 WL 1276982 (M.D. Fla. 2025), *report and recommendation adopted*, 2025 WL 1111222 (M.D. Fla. 2025)....................8

*Milana v. Credit Disc. Co.*,
27 Cal. 2d 335 (1945) ....................4

*Patton v. Wells Fargo Fin. Md., Inc.*,
437 Md. 83 (2014) ....................6

*Payne v. Diner's Club Int'l*,
696 F.Supp. 1153 (S.D. Ohio 1988) ....................8

*Riethman v. Berry*,
287 F.3d 274 (3d Cir. 2002)....................5

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) ....................9

*Schlegel v. Wells Fargo Bank, NA*,
720 F.3d 1204 (9th Cir. 2013) ....................4

*Shaumyan v. Sidetex Co.*,
900 F.2d 16 (2d Cir. 1990)....................5

*Thiel v. Veneman*,
859 F.Supp.2d 1182 (D. Mont. 2012)....................5

*Vasquez v. Bank of Am., N.A.*,
2013 WL 6001924 (N.D. Cal. 2013) ....................9

*Wigod v. PNC Bank, N.A.*,
338 F. Supp. 3d 758 (N.D. Ill. 2018) ....................8

*Winebarger v. Pennsylvania Higher Educ. Assistance Agency*,
411 F.Supp.3d 1070 (C.D. Cal. 2019) ....................9

**Statutes**

15 U.S.C. § 1691 *et seq.* ........ *passim*

Civ. Code § 1912 ........ 4

Md. Code Ann., Com. Law § 12–704 ........ 3, 6, 7

Md. Code Ann., Com. Law § 12-701 *et seq.* ........ 1, 2

**Other Authorities**

12 C.F.R. pt. 202, App. C ........ 6, 7

12 C.F.R. pt. 1002, App. C ........ 6, 7

12 C.F.R. § 202.9 ........ 3, 6, 7, 8

12 C.F.R § 226.1(e) ........ 4

12 C.F.R § 226.2(a)(14) ........ 4

12 C.F.R. § 1002.9(a)(2) ........ 6, 8

12 C.F.R. § 1026.2 ........ 5, 6

Fed. R. Civ. P. 12(b)(6) ........ 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The crux of Plaintiff Michelle A. Kemp's ("Plaintiff") action centers on her application submitted to Defendant Point Digital Finance, Inc. ("Point") around January 20226. Point is a consumer financial services company that helps homeowners access the equity in their real property without the use of debt or credit. In exchange for a cash payment made by Point to the homeowner, the homeowner grants Point an *option* to purchase a percentage interest of the homeowner's property, which Point can only exercise under specific events. Since Point is not required to exercise the option contract, it shares in the potential future appreciation of the homeowners' property, and the risk that the property value decreases and therefore Point shares in any loss, up to a complete loss of its cash investment payment.

After Plaintiff submitted her application for Point's home equity investment product, Point sent Plaintiff an email notification denying the application on the basis that Plaintiff's FIC credit score did not meet Point's guidelines. In the notice, Point provided a number of disclosures related to her credit score and the denial and specifically advised Plaintiff that she can request a statement of specific reasons for the denial by emailing or calling Point at the specified contact information. The notice also contained a hyperlink to Point's public website which further explained its minimum FICO credit score to qualify and that Plaintiff's score was below that minimum.

Despite Plaintiff's receipt of this notice, she nonetheless filed suit alleging violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* and Maryland Equal Credit Opportunity Act ("MECOA"), Md. Comm. Law Code Ann. § 12-701 *et seq*— both premised on the notion that Point discriminated against Plaintiff as a woman when its denied her application. Plaintiff further contends that Point failed to notify her of the "specific reasons" for its adverse action.

Plaintiff's claims are misplaced. ECOA and MECOA, which only apply to a creditor who offers "credit," does not apply to Point who enters into *options* to purchase an interest in real property. As argued below, option contracts are generally excluded from the definition of "credit" under federal law and cases analyzing nearly identical products. Even then, if these laws apply to the denial Point

sent to Plaintiff, Plaintiff's own allegations show that Point satisfied any disclosure requirements. Specifically, federal regulations make clear that a creditor may disclose the applicant's right to request a statement of specific reasons, which is precisely what Point disclosed in its notice to Plaintiff. In fact, Point's notice, which the Court may consider in connection with Point's corresponding request for incorporation by reference and judicial notice, tracks the sample form disclosures published under the applicable federal regulations. Federal regulations and courts around the country routinely hold that such form language is sufficient to comply with ECOA as a matter of law. Notwithstanding the above, Plaintiff's claims still fail as a matter of law as her conclusory and unsupported allegation that Point denied her application on the basis of her sex is not only inconsistent with her own allegations but entirely unsupported as a matter of law.

For these reasons, Plaintiff's claims are futile. Point therefore respectfully requests that this Court grants its motion to dismiss Plaintiff's operative complaint *with* prejudice.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff Alleges She Applied for Point's Home Equity Investment Product in January 2026, Which Point Later Declined

Around January 2026, Plaintiff alleges she applied for Point's Home Equity Investment product, which she characterizes as a "line of credit." *See* Compl. ¶¶ 5, 9. On January 30, 2026, Point declined Plaintiff's application and sent Plaintiff an email notifying her of the purported adverse action. *Id.* ¶ 10. Plaintiff alleges that the email notified her, in part, that Point was "unable to approve [Plaintiff's] application at this time for the following reason(s): Credit score doesn't meet guidelines." *Id.* ¶ 11. Plaintiff alleges the email neither explained the factors affecting its decision nor stated the credit score in question was too low. *Id.* ¶ 12. Plaintiff also alleges the email did not inform Plaintiff of any right to a written statement of reasons explaining the rationale for the adverse action. *Id.* ¶ 14.

### B. Plaintiff Files Suit Against Point Alleging State and Federal Statutory Claims of Discrimination Against an Applicant Due to Her Sex

On March 8, 2026, Plaintiff filed her complaint asserting two causes of action—one for violation of the ECOA, 15 U.S.C. § 1691 *et seq*, and the other under the MECOA, Md. Comm. Law Code Ann. § 12-701 *et seq*— both premised on the notion that Point discriminated against Plaintiff as

a woman when its denied her application for Point's Home Equity Investment product. Compl. ¶¶ 7-8, 10, 24, 32. Specifically, Plaintiff alleges Point failed to notify or explain the specific reasons why it took adverse action in violation of 15 U.S.C. § 1691(a) and failed to provide a written statement of the specific reasons for its adverse action in violation of15 U.S.C. § 1691(d) and § 12 C.F.R. 202.9. Compl. ¶¶ 24, 27. Plaintiff alleges an identical basis supporting her claim under MECOA pursuant to Md. Comm. Law Code Ann. § 12-704(3). Point moves to dismiss Plaintiff's claims on the basis that neither ECOA nor MECOA apply to Point, and even if they did, the allegations show Point complied with any required disclosures and therefore Plaintiff cannot state a claim under either statute.

## III. LEGAL STANDARD

A court must dismiss a complaint if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As such, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted).

## IV. LEGAL ARGUMENT

### A. An Option Contract is Generally Not Considered "Credit" and Thus ECOA Does Not Govern Plaintiff's Application for Point's Product

Under ECOA, it is "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction (1) on the basis of race, color, religion, national origin, sex or marital status, or age ..." 15 U.S.C. § 1691a(1). To assert a claim, a plaintiff must allege that: (1) they are members of a protected class; (2) they applied for credit with defendants; (3) they qualified for credit; and (4) they were denied credit, despite being qualified. *Hafiz v. Greenpoint Mortg. Funding, Inc.,* 652 F.Supp.2d 1039, 1045 (N.D. Cal. 2009). Applicable here, an "applicant" refers to any person "who applies to a creditor directly for an extension, renewal, or continuation of credit..." 15 U.S.C. § 1691a(b). A "creditor," on the other hands, means "any person who regularly extends, renews, or continues credit…." *Id.* § 1691a(e). In other words, for ECOA to govern the applications,

it must involve "credit."

ECOA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C.A. § 1691a(d). Undefined terms like "debt" are generally given the meanings to them under state law or common law plain meanings. *See Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1210 (9th Cir. 2013) (applying the plain meaning of the undefined term in connection with an ECOA claim); *see also Billings v. Propel Fin. Servs.*, 821 F.3d 608, 610 (5th Cir. 2016) (applying the state law definition of the term "debt" where federal law did not define the term); *see* Civ. Code § 1912 (defining the "loan of money" as "a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed."); *Milana v. Credit Disc. Co.*, 27 Cal. 2d 335, 339 (1945) ("A loan…is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use[.]").

Courts analyzing similar types of transaction hold that an option to participate in the appreciation of real property is "not a loan" under other federal law, including under the Truth in Lending Act ("TILA"), and its related regulations.[1] *Foster v. Equitykey Real Est. Invs.*, 2017 WL 1862527, at *4 (N.D. Cal. 2017). In *Foster*, the plaintiff sued under TILA, arguing EquityKey fraudulently concealed the agreement was a loan, but the court disagreed and focused on the fact that plaintiff owes no debt and "there [was] no guarantee that the payment received by [plaintiff] need ever be returned," considering that EquityKey "[was] not obliged to exercise its option." *Id.* at *4-5. Because plaintiff "did not agree to 'repay absolutely,'" the option was "not a loan." *Id.* (quoting *In re*

[1] The definition of "credit" under ECOA is nearly identical to the definition under TILA, implemented through Reg Z, which also defines "credit" as the right to defer payment of debt or to incur debts and defer its payment. 12 C.F.R § 226.1(e), 226.2(a)(14). Because ECOA and TILA share deferral of payment as a core element essential to credit, courts routinely apply the same analysis in determining whether a given transaction falls within the scope of either statute. *See, e.g.*, *Consumer Financial Protection Bureau v. Snap Finance LLC*, 2024 WL 3625007, at *5 (D. Utah 2024) (recognizing that ECOA, TILA, and other consumer-protection statutes "share identical or nearly identical definitions of credit" and applying ECOA case law to construe the parallel definition under other statutes); *Riethman v. Berry*, 113 F.Supp.2d 765, 769–70 (E.D. Pa. 2000) *aff'd*, 287 F.3d 274 (3d Cir. 2002) (applying the same deferral-of-payment analysis to dispose of plaintiffs' ECOA and TILA claims in tandem).

*Grand Union Co*., 219 F.353, 356 (2d Cir. 1914));[2] *see also Goldwater Bank, N.A. v. Elizarov*, 2022 WL 18231680, at *1 (C.D. Cal. 2022) (rejecting argument that an option contract was a "loan" and relying on *Foster* to hold the product "made clear that Option Agreement was not a loan"), *rev'd and remanded sub nom*. *Goldwater Bank, NA v. Bank of the W*, *2025* WL 841846 (9th Cir. 2025) (reversed on other grounds). The rationale supporting *Foster* applies here. First, Point's product, an option contract, contains no element of credit as it does not require repayment and since Point is not required to exercise the option. *See In re AEG Acquisition Corp*., 127 B.R. 34, 39 (Bankr. C.D. Cal. 1991), *aff'd*, 161 B.R. 50 (B.A.P. 9th Cir. 1993) (noting that the "distinguishing characteristic of an option contract," under California law, "is that it imposes no binding obligation upon the person holding the option; and where there is not merely the right, but the obligation to buy, the contract is not one of option"); *see*, *e.g*., *Riethman v. Berry*, 287 F.3d 274, 277 (3d Cir. 2002) ("The hallmark of 'credit' under the ECOA is the right of one party to make deferred payment."); *Shaumyan v. Sidetex Co*., 900 F.2d 16, 18 (2d Cir. 1990) ("[I]t is apparent that the ECOA extends only to instances in which the right to defer payment of an obligation is granted. Absent a right to defer payment for a monetary debt, property or services, the ECOA is inapplicable."). Additionally, Point has no unconditional right to recover the cash payment it makes to a homeowner in exchange for the option. *Foster*, 2017 WL 1862527, at *4-5; *see Thiel v. Veneman*, 859 F.Supp.2d 1182, 1201 (D. Mont. 2012) (holding that a product which required a payment in exchange for the potential offset of certain losses did not meet the definition of "credit" as the recipient was not required to repay the payment and the benefits received did not involve deferral of any repayment). Like the defendant in *Foster*, Point bears the risk of loss if the property fails to appreciate or appreciates at a slower rate than inflation.[3] Moreover, other federal guidance, including the Commentary, states that "investment plan[s]" and "option contracts"

---

[2] The court also reasoned the transaction shares features of an "investment plan" as described in the Official Staff Commentary to Reg Z (the "Commentary"), which is similarly excluded from the definition of "credit." *Id*. at *5. The court held that EquityKey "risked the loss of the capital it advanced," since a decrease in home values could cause it to lose money on the transaction. *Id*.

[3] *Foster*, at *5 ("EquityKey is not obliged to exercise its option. If home prices decrease, it would have little reason to do so. If home values increase, but at a rate that is slower than inflation (or at a slower rate than the rate of return one could receive from a prudent investment of the option premium), then even if EquityKey calls the option, it would ultimately lose money on the deal.").

do not constitute "credit." 12 C.F.R. 1026.2, Supp. I cmt. 2(a)(14)(1)(vii), (viii).[4] For these reasons, Point's product does not meet the definition of "credit" as a matter of law, which is fatal to Plaintiff's ECOA and MECOA[5] claims. *See* 12 C.F.R. 1026.2, Supp. I cmt. 2(a)(14)(1)(vii), (viii); *Foster*, 2017 WL 1862527, at *5.

**B. Even If ECOA Governed Point's Option Contract, Point Complied with Any Requirements by Making a Regulation-Approved Disclosure Notifying Plaintiff of Her Right to Request a Statement of Specific Reasons for Her Denial**

Notwithstanding that ECOA does not govern the conduct at issue here, even assuming ECOA applied to Point's denial of Plaintiff's application for an option contract, the allegations make clear that Point satisfied any applicable disclosure requirements.

ECOA imposes notification requirements on creditors when they deny credit applications. *See* 15 U.S.C. § 1691(d). When a "creditor" takes "adverse action" against an applicant, the applicant "shall be entitled to a statement of reasons for such action." *Id.* § 1691(d)(2). Under the regulations, this notice can either include: (i) a statement of specific reasons for the action taken, or (ii) a disclosure of the applicant's right to a statement of specific reasons within 30 days, if the statement is requested within 60 days of the notification. 12 C.F.R. § 202.9(a)(2) (stating a notification to the applicant shall contain "either: (i) A statement of specific reasons for the action taken; or (ii) A disclosure of the applicant's right to a statement of specific reasons within 30 days, if the statement is requested within 60 days of the creditor's notification…."); 12 C.F.R. § 1002.9(a)(2) (same). The regulations include sample form disclosures and a creditor "may ... use all or a portion of the [sample] forms" to satisfy its notification requirements. 12 C.F.R. pt. 202, App. C; 12 C.F.R. pt. 1002, App. C.

---

[4] *See Ford Motor Credit v. Milhollin*, 444 U.S. 555, 565 (1980) (unless demonstrably irrational, Federal Reserve Board staff opinions construing TILA are dispositive).

[5] Plaintiff's claim under MECOA is premised on alleged violations of ECOA. Compl. ¶¶ 33-34. "The MECOA is modeled after the federal ECOA." *Combs v. Bank of Am., N.A.*, 2015 WL 5008754, at *3 (D. Md. 2015) (citing *Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83, 99-100 (2014)). Under the statute, "[a] creditor that complies with the applicable provisions of the [ECOA]...is in compliance with the requirements of this subtitle; and...[a]ny violation of the [ECOA]...is a violation of the provisions of this subtitle." Md. Code Ann., Com. Law § 12–704(2)–(3). Thus, to the extent Plaintiff's ECOA claim fails to withstand Rule 12(b)(6) scrutiny, her MECOA claim fails for the same reasons. *See Glenn v. Wells Fargo Bank, N.A.*, 2016 WL 3570274, at *5 (D. Md. 2016) (granting a motion to dismiss on ECOA and MECOA claims based on the same reasoning).

Form C-5 of the sample notification forms contemplates a disclosure of an applicant's right to request the specific reasons for a credit denial by requiring, in relevant part, the following language:

> […]
> After carefully reviewing your application, we are sorry to advise you that we cannot [open an account for you/grant a loan to you/increase your credit limit] at this time. If you would like a statement of specific reasons why your application was denied, please contact [our credit service manager] shown below within 60 days of the date of this letter. We will provide you with the statement of reasons within 30 days after receiving your request.
> […]

12 C.F.R. pt. 202, App. C; 12 C.F.R. pt. 1002, App. C.

As set forth below, Plaintiff cannot maintain Point violated ECOA when her own allegations concede Point not only notified her of her credit denial but provided her with a disclosure that tracked, nearly verbatim, the sample form disclosure permitted under applicable regulations. Specifically, Plaintiff concedes that after applying for Point's product, around January 30, 2026, Point "sent Plaintiff an email notifying her of the adverse action." Compl. ¶ 11. Although Plaintiff quotes selective portions of the notice [*id.* ¶¶ 11-14, 27, 34] and relies upon the language of the notice in support of her claims, she does not attach the notice as an exhibit to her complaint. *See generally* Compl. As set forth in Point's corresponding request for judicial notice ("RJN"), under the doctrines of incorporation by reference and judicial notice, the Court may take judicial notice of the January 30, 2026 notice Point sent to Plaintiff. RJN, EX. A (Jan. 30, 2026 Notice). In relevant part, the January 30, 2026 email states:

> If you have any questions or would like a statement of specific reasons why your application was denied, please contact Point at decision-info@point.com or 888-764-6823 within 60 says of the date of this letter. We will provide you with a statement of the specific reasons for our action within 30 days after receiving your request.

*Id.* Point's disclosure here tracks the sample form disclosure under Form C-5 of the sample notification forms approved by the applicable regulations. *See* 12 C.F.R. pt. 202, App. C; *see also* 12 C.F.R. pt. 1002, App. C. Since the regulations permit the disclosing party to "use all or a portion of the [sample] forms" to satisfy its notification requirements, Point's January 30, 2026 notice satisfies the requirements under 15 U.S.C. § 1691(d), 12 C.F.R. § 202.9, and Md. Comm. Law Code Ann. § 12-704. 12 C.F.R. pt. 202, App. C (Sample Notification Forms); 12 C.F.R. pt. 1002, App. C. (Same).

Federal courts analyzing these requirements routinely reject ECOA claims brought against a creditor which tracked the regulation-approved sample form disclosures. *See*, *e.g.*, *Barat v. Navy Fed. Credit Union*, 127 F.4th 833, 836 (11th Cir. 2025) (affirming grant of motion to dismiss where a creditor used the "approved language verbatim in the statement of reasons[.]"); *Lumpkin v. Am. Express Co.*, 2025 WL 1276982, at *4 (M.D. Fla. 2025), *report and recommendation adopted*, 2025 WL 1111222 (M.D. Fla. 2025) ("Because the denial letter uses a Federal Reserve System and CFPB-approved reason for the denial…and uses Federal Reserve System and CFPB-approved language, it satisfies Section 1691(d)'s requirement that the letter list specific reasons for the adverse action taken."); *Collins v. San Antonio Dodge Chrysler Jeep Ram*, 2025 WL 3143640, at *4 (W.D. Tex. 2025) (granting motion to dismiss where disclosures includes the approved reasons for taking adverse action that were "included in the sample forms[.]"); *Wigod v. PNC Bank, N.A.*, 338 F. Supp. 3d 758, 766 (N.D. Ill. 2018) (holding that creditor was not liable under the ECOA because its adverse-action notice tracked the language in the sample notification forms); *see Payne v. Diner's Club Int'l*, 696 F.Supp. 1153, 1157 (S.D. Ohio 1988) (rejecting a vague notice claim where "the [creditor's] statement was substantially similar to the sample forms in Appendix C of the regulation"). Since the allegations and judicially noticeable documents show that Point indeed disclosed Plaintiff's right to request a statement of specific reasons, Plaintiff cannot sufficiently maintain her ECOA and MECOA claims as a matter of law. *See* 12 C.F.R. § 202.9(a)(2); 12 C.F.R. § 1002.9(a)(2); RJN, Ex. A.[6]

## C. Plaintiff Fails to Sufficiently Allege Facts Supporting Her Theory of Discrimination

[6] Plaintiff alleges, without support, that Point's notice failed to explain the factors affecting the denial or "stat[e] outright that the score in question was too low." Compl. ¶ 12. This allegation, however, is contradicted by the judicially noticeably documents. RJN, Ex. A (identifying Plaintiff's specific credit score and listing four factors adversely affecting the credit score). While Plaintiff concedes the January 30, 2026 email disclosed her "[c]redit score doesn't meet guidelines[,]" she omits that this statement *hyperlinked* to a public website which states unequivocally the "minimum FICO score to qualify is 500. Based on the information we received about your FICO, it is currently below 500[,]" and provides additional information for Plaintiff to become re-eligible. RJN, Ex. B (Point, *Rejection reason: Credit score doesn't meet guidelines*, available at https://point.com/notice/credit-score-doesnt-meet-the-guidelines-pq (accessed Apr. 23, 2026)). Plaintiff's inconsistent allegations are contradicted by the judicially noticed documents, and the contents of such documents supersede Plaintiff's contrary allegations. *See Cyclone USA v. LL&C Dealer Servs.*, 2003 WL 27377175, at *1 (C.D. Cal. 2003) ("court need not give credence to…any allegation that contradicts an exhibit attached to the complaint or judicially noticed facts.").

Regardless, Plaintiff still cannot credibly allege Point violated ECOA or MECOA as she fails to allege any facts supporting her theory of discrimination. While Plaintiff alleges that as a woman, she is part of a protected class, her only allegation in support of discrimination is her conclusion that Point "den[ied] her credit due to her sex." *See* Compl. ¶¶ 8, 24. But Plaintiff pleads no facts supporting her claim that Point's denial was due to her status as a woman. Nor can she. Plaintiff's own allegations demonstrate she was denied credit due to her low credit score not meeting Point's guidelines. Compl. ¶ 11 ("Defendant sent Plaintiff an email notifying her of the adverse action, which stated in part: "we regret that we are unable to approve your application at this time for the following reason(s): Credit score doesn't meet guidelines."); RJN, Ex. A (Jan. 30, 2026 Notice), Ex. B ("Rejection reason: Credit score doesn't meet guidelines. What does this mean? Our minimum FICO score to qualify is 500. Based on the information we received about your FICO, it is currently below 500."). Thus, since Plaintiff fails to allege sufficient facts demonstrating she "qualified for credit" and her own allegations show she did not qualify for Point's product, which is not credit, due to her low credit score, she cannot credibly maintain she was "denied credit despite being qualified," as she must. *Vasquez v. Bank of Am., N.A.*, 2013 WL 6001924, at *13 (N.D. Cal. 2013) (holding that a plaintiff, who is a member of a protected class, must plead sufficient facts from which it is plausible to conclude she was denied for those reasons, and specific facts demonstrating she "qualified for credit," and was "denied credit despite being qualified," and not mere conclusory assertions); *Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1160 (N.D. Cal. 2011) (granting motion to dismiss ECOA claim where plaintiffs, who alleged they were members of a protected class, failed to allege they were rejected for credit "for which [they] qualified" and further admitted they did not qualify for other reasons). Since Plaintiff has not, and cannot, allege she qualified and was denied Point's product despite being qualified, her ECOA and MECOA claims also necessarily fail as a matter of law. *Id.*

**D. Amendment Would Be Futile, Thus Dismissal with Prejudice Is Warranted**

While leave to amend a complaint generally should be granted liberally, there is no reason to allow amendment when the defects in the pleading cannot be cured and amendment would be futile. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of

leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.”). “Leave to amend may be denied if a court determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.” *Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (quotations and citations omitted).; *see Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F.Supp.3d 1070, 1091 (C.D. Cal. 2019) (denying leave to amend ECOA claim where there were no alleged facts that they might be able to plead if leave was granted); *Akhavein v. Argent Mortg.*, 2009 WL 2157522, at *6 (N.D. Cal. 2009) (granting motion to dismiss with prejudice where any attempt to amend the claim would be futile). Since any amendment of her ECOA and MECOA claim would still fail for the same reasons addressed above, Plaintiff cannot possibly cure her defects through amendment and dismissal with prejudice is warranted.

## V. CONCLUSION

As set forth above, Plaintiff’s claims are fundamentally flawed. First, neither ECOA nor MECOA apply to Point since Point offers an *option* contract, which does not meet the definition of “credit.” Second, even if these prohibitions applied, Point indeed complied by providing Plaintiff with the very disclosure she complains she did not receive. Since the disclosure tracks the regulation-approved sample disclosure, Plaintiff cannot state a claim for relief. Third, Plaintiff has not, and cannot, sufficiently allege any facts supporting the alleged discrimination based on sex, especially considering the notice in question expressly discloses that Plaintiff’s denial stems from her low credit score. For these reasons, Point respectfully requests that the Court grants its motion to dismiss Plaintiff’s complaint *with* prejudice.

Date: April 27, 2026

Respectfully submitted,

**SCALE LLP**

By: */s/ Alexander J. Gershen*
Alexander J. Gershen

2261 Market Street, Ste 85604
San Francisco, CA 94114
Telephone: 415.735.5933
agershen@scalefirm.com

Attorney for Defendant
Point Digital Finance, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2026, a copy of the foregoing pleading, with any and all attachments, was filed electronically with the clerk of court via ECF, which will serve all counsel of record, and served via First-Class Mail to any party not filing ECF, postage prepaid.

This the 27th day of April, 2026.

By: */s/ Alexander J. Gershen*

Alexander J. Gershen
2261 Market Street, Ste 85604
San Francisco, CA 94114
Telephone: 415.735.5933
agershen@scalefirm.com

Attorney for Defendant
Point Digital Finance, Inc.